### STATE v. BIERBAUM.
No. 77-60746TT-A04.
County Court, Palm Beach County.
September 9 1977.

Timothy J. Hmielewski, Delray Beach, for the state.

Andrew M. Chansen, Fort Lauderdale, for the defendant.

DANIEL T. K. HURLEY, County Court Judge.

This cause came on before the court upon the defendant's motion to supress certain blood analysis results. From the testimony presented at the hearing on the motion, the court makes the following —

### Findings of fact

On July 4, 1977, at 11:39 P.M., Gary Bierbaum was involved in a one-car collision on Camino Real in Boca Raton. After the collision he was taken to the emergency room at the Boca Raton Community Hospital. Upon arrival, he was conscious, was bleeding about the face and complained of being in great pain.

After investigating the scene of the collision, Officer Despres of the Boca Raton Police Department went to the hospital to interview the defendant. He saw and apparently talked with the defendant. The officer noted that the defendant smelled of alcohol. Then, without placing Mr. Bierbaum under arrest or issuing him a traffic citation, and without telling him that his failure to submit to a blood test would result in the suspension of his driving privileges for a period of three months, Officer Despres authorized a technician to draw a blood sample. The defendant complied without comment. He was released from the hospital within two or three hours after admission.

From these findings, the court reaches the following —

### Conclusions of law

Under subsection 1(a) of Florida Statute 322.261, there are two legal prerequisites for the administration of a test for alcohol in the bloodstream — (1) the test must be incident to a lawful arrest, and (2) the person must be told that his failure to submit to the test will result in the suspension of his privilege to operate a motor vehicle for a period of three months. Both prerequisites are waived, however, if the person falls into the category described in subsection 1(c) of the statute. If he ". . . is incapable of refusal by reason of unconsciousness or other mental or physical condition . . . ," he need not be placed under arrest and he need not be told of the consequences of a refusal. This is consistent with the principle that the law does not require a useless gesture. In discussing this very subsection of the statute, the Florida Supreme Court in *State v. Mitchell*, 245 So.2d 618, 623 (Fla. 1971), said —

> "We hold, therefore, that it is unnecessary either under the Federal or Florida Constitutions or under Florida Statutes 322.261 to place a person under arrest prior to administering

a blood test as authorized under subsection 1 (b) [now subsection 1(c)] of the Act."

The Attorney General in Opinion 073-361, set forth the law as follows —

"Since 322.261(1)(b) [which is now subsection (1)(c)] does not require that the person be arrested prior to the administration of a blood test, and since there are no constitutional barriers in this regard, I must conclude that a blood test may be administered to a person who is incapacitated and who is admitted to a hospital as a result of his involvement as a driver in a motor vehicle accident . . ."

The question which this case presents is what degree of incapacity must be proven before there can be a change in focus from subsection 1(a) to subsection 1(c). The mere fact that a person is taken to a hospital does not settle the question. See, e.g., *State v. Riggins*, ........ So.2d ........ (Fla. 4th DCA slip op. filed July 22, 1977). Rather, the state has the burden of showing that it would have interfered with medical treatment or would have been a useless gesture to comply with the statutory mandate and advise the person of the consequences of a refusal to take the test.

In the case at bar, with the defendent bleeding about the face, complaining of great pain, and being attended by physicians in the emergency room, the court concludes that the state has met its burden and that the case is to be measured by the standards of 1(c).

Accordingly, it is ordered and adjudged that the defendant's motion is denied.